UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KARLIS RUBEN AUGUSTUS HOWARD,<br><br>            Plaintiff,<br><br>    v.<br><br>COUNTY OF KERN, et al.,<br><br>            Defendants. | Case No. 1:24-cv-00387-HBK (PC)<br><br>SCREENING ORDER DISMISSING CLAIMS AND DEFENDANTS DEEMED NOT COGNIZABLE IN AMENDED COMPLAINT; AND DIRECTING DEFENDANTS TO FILE RESPONSE[1]<br><br>Doc. No. 36 |

Pending before the Court for screening under 28 U.S.C. § 1915A is the amended pro se civil rights complaint filed under 42 U.S.C. § 1983 on November 1, 2024 by Karlis Ruben Augustus Howard—a former state prisoner.[2] (Doc. No. 36). Upon review, the Court finds the amended complaint states only cognizable Eighth Amendment conditions of confinement claims against Defendants DeGough, Shirley, and Cronjager, and state law claims against the same three individual Defendants for negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress, but fails to state any other cognizable claim. The Court directs Defendants to file a response to the claims deemed cognizable in the amended complaint and

---

[1] All parties have consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c)(1). (Doc. No. 46).

[2] Plaintiff filed the amended complaint while still incarcerated in Avenal State Prison. Plaintiff filed a change of address on February 4, 2025 reflecting his release from prison. (See Doc. No. 39).

dismisses the Defendants and claims not deemed cognizable.

## SCREENING REQUIREMENT

A plaintiff who commences an action while in prison is subject to the Prison Litigation Reform Act ("PLRA"), which requires, *inter alia*, the court to screen a complaint that seeks relief against a governmental entity, its officers, or its employees before directing service upon any defendant. 28 U.S.C. § 1915A. This requires the court to identify any cognizable claims and dismiss the complaint, or any portion, if is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b)(1), (2).

At the screening stage, the court accepts the factual allegations in the complaint as true, construes the complaint liberally, and resolves all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Bernhardt v. L.A. County*, 339 F.3d 920, 925 (9th Cir. 2003). A court does not have to accept as true conclusory allegations, unreasonable inferences, or unwarranted deductions of fact. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Critical to evaluating a constitutional claim is whether it has an arguable legal and factual basis. *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989).

The Federal Rules of Civil Procedure require only that a complaint include "a short and plain statement of the claim showing the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Nonetheless, a claim must be facially plausible to survive screening. This requires sufficient factual detail to allow the court to reasonably infer that each named defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678; *Moss*, 572 F.3d at 969. Although detailed factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678 (citations omitted), and courts "are not required to indulge unwarranted inferences," *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

If an otherwise deficient pleading can be remedied by alleging other facts, a *pro se* litigant is entitled to an opportunity to amend their complaint before dismissal of the action. *See Lopez v. Smith*, 203 F.3d 1122, 1127-29 (9th Cir. 2000) (en banc); *Lucas v. Department of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).  However, it is not the role of the court to advise a pro se litigant on how to cure the defects.  Such advice "would undermine district judges' role as impartial decisionmakers." *Pliler v. Ford*, 542 U.S. 225, 231 (2004); *see also Lopez*, 203 F.3d at 1131 n.13.  Furthermore, the court in its discretion may deny leave to amend due to "undue delay, bad faith or dilatory motive of the part of the movant, [or] repeated failure to cure deficiencies by amendments previously allowed . . . ." *Carvalho v. Equifax Info. Srvs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010).

## SUMMARY OF THE OPERATIVE COMPLAINT

Plaintiff, Karlis Ruben Augustus Howard, a former state prisoner, filed his amended complaint after the Court's screening and service of his operative complaint, but before Defendants filed a response to the complaint. (*See* Doc. Nos. 10, 12, 13).  The events giving rise to the SAC took place at Wasco State Prison ("WSP") in Wasco, CA.  (Doc. No. 36 at 3).  The SAC names as Defendants (1) County of Kern, (2) the City of Wasco, (3) John Does 1-10,[3] (4) Heather Shirley, Warden of WSP, (5) James Cronjager, Head of Health and Safety at WSP, and (6) Scott DeGough, Acting Water Contractor at WSP.  (*Id*. at 3-5).  (*Id*. at 2-3).  Plaintiff asserts violations of the Eighth and the Fourteenth Amendments, as well as state law violations, including negligence, intentional infliction of emotional distress ("IIED"), and negligent infliction of emotional distress ("NIED").  (*Id*. at 1).  The following facts are presumed true at this stage of the screening process.

Plaintiff was housed at WSP from March 2, 2023 to May 16, 2023.  (*Id*. at 17).  During this two-month period, Plaintiff was subjected to drinking toxic water contaminated with 1,2,3-Trichloropropane ("TCP").  (*Id*. at 6, 17).  All Defendants were aware of the contamination and

---

[3] The SAC lists John Does 1-5 as policymakers for Kern County and John Does 6-10 as policymakers for the City of Wasco. (Doc. No. 36 at 4). Throughout the SAC, these John Doe defendants are collectively referred to as John Does 1-10.  For the purposes of this screening, the Court will refer to them in the same manner.

3

1 failed to take remedial action. (*Id*. at 11, 13, 16).

2 Defendant DeGough, the Acting Water Contractor at WSP, relayed false information to WSP staff, regarding water contamination at the prison. (*Id*. at 6). DeGough failed to monitor the true risks of the dangerous toxin and failed to tell his superiors the truth of the risk of stomach ailments and the risk of cancer. (*Id*.). Plaintiff claims the City of Wasco and County of Kern failed to properly supervise DeGough and prevent his unconstitutional actions. (*Id*.).

Defendant Cronjager, the Head of Health and Safety, has a sworn duty to always second guess, investigate, and go "above and beyond" to make sure that the water is not toxic and infested with chemicals that kill. (*Id*.). Cronjager "maliciously failed in the above professional duty for years." (*Id*.).

Defendant Shirley, the Warden of WSP, took no effective action to remedy the contamination issues at WSP despite having "firsthand knowledge of the severe risk posed by Kern County's water."[4] (*Id*. at 8). Rather, Shirley outlawed bottled water for sale which prevented inmates from obtaining a safe alternative to tap water, and "misallocated federal funds . . . for her and her colleagues' personal use" that could have been used "to combat and correctly treat" the water pollution at WSP. (*Id*.).

Defendants County of Kern, City of Wasco, and John Does 1-10 "created, allowed, permitted, encouraged . . . a practice or custom of Toxic Wasco Water" from 2017 to 2024. (*Id*. at 5-6). Defendants set a three-year date from December of 2017 to fix the problem. (*Id*. at 6). However, seven plus years later, the problem still exists. (*Id*. at 6). Defendants have been failing state water quality and monitoring regulations, as well as federal anti-pollution laws due to elevated levels of 1, 2, 3-TCP in the water. (*Id*. at 7). Plaintiff opines that if Defendants had followed these regulations "Valley Fever, COVID-19 and the cancer epidemic would not exist." (*Id*.).

Plaintiff avers he has suffered from "kidney damage, liver damage, anguish . . . degradation, humiliation, and profound emotional distress" from drinking the contaminated water.

---

[4] Shirley's knowledge is demonstrated by the similar issues faced by neighboring cities and the extensive media attention on the subject. (*Id*.).

4

(*Id*. at 19).  Plaintiff seeks declaratory relief, as well as compensatory and punitive damages.  (*Id*. at 25).

## APPLICABLE LAW AND ANALYSIS

### A. Section 1983

Section 1983 allows a private citizen to sue for the deprivation of a right secured by federal law.  *See* 42 U.S.C. § 1983; *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 916 (2017).  "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Chudacoff v. Univ. Med. Ctr. of S. Nev.*, 649 F.3d 1143, 1149 (9th Cir. 2011) (citing *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003)); *Soo Park v. Thompson*, 851 F.3d 910, 921 (9th Cir. 2017).   "The 'under color of law' requirement under § 1983 is the same as the Fourteenth Amendment's 'state action' requirement." *Chudacoff* at 1149 (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 928 (1982)).  An individual defendant is not liable on a civil rights claim unless the facts establish either the defendant's personal involvement in the constitutional deprivation or a causal connection between the defendant's wrongful conduct and the alleged constitutional deprivation.  *See Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978).

"There is no respondeat superior liability under section 1983." *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted).  A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations or knew of the violations and failed to act to prevent them.  *Id*., *see also Starr v. Baca,* 652 F.3d 1202, 1206–07 (9th Cir. 2011).

### B. Eighth Amendment Conditions of Confinement

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment," which prohibits "cruel and unusual punishment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993); U.S. Const. Amend. VIII.  A violation of the Eighth Amendment requires a showing of both an "objective component"—the objective seriousness of the challenged condition, and a "subjective component"—the responsible

official's subjective state of mind. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). In challenging living conditions under the Eighth Amendment, a prisoner must establish "unquestioned and serious deprivations of basic human needs" or the absence of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); accord *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Basic human needs identified by the Supreme Court include "food, clothing, shelter, medical care and reasonable safety," *Helling*, 509 U.S. at 32, as well as "warmth [and] exercise." *Wilson*, 501 U.S. 304-05. Factors affecting whether a condition is sufficiently serious include its duration, the attendant circumstances, and nature of the particular deprivation. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000).

The more basic the need, the shorter the time it can be withheld. *See Johnson*, 217 F.3d at 731. Substantial deprivations of shelter, food, drinking water or sanitation for four days, for example, are sufficiently serious to satisfy the objective component of an Eighth Amendment claim. *Id.* 732–733. *See, e.g., Hearns v. Terhune*, 413 F.3d 1036, 1042–43 (9th Cir. 2005) (holding that plaintiff's allegation that he was confined in administrative segregation for nine months, during which time he was deprived of clean running water, was sufficient to state a conditions of confinement claim); *see Preayer v. Ryan*, 2016 WL 5341177 (D. Ariz. 2016) (lack of running water for two months sufficient to satisfy the objective component of the deliberate indifferent analysis).

To satisfy the subjective prong, the inmate must show that the prison official was deliberately indifferent—"possessed a sufficiently culpable state of mind." *Wilson*, 501 U.S. 297-98. This requires the official to be aware of the substantial risk of harm and disregard that risk by failing to abate it using reasonable measures. *Farmer*, 511 U.S. at 837-45. This level requires more than negligence but less than actual malice. *Id.* at 835-36.

Liberally construing Plaintiff's amended complaint, the Court finds that Plaintiff sufficiently alleges that he is forced to drink contaminated water, and that this contaminated water poses an excessive risk to his health and safety. According to Plaintiff, he has already suffered numerous symptoms, including chronic kidney damage, body rashes, and liver pain.

Plaintiff also alleges that Defendants Shirley (the Warden), Cronjager (the Head of Health and Safety), and Degough (the acting Water Contractor) knew about the toxic water at WSP because of constant news stories, magazine articles, and newspapers reporting on the failed water in Kern County. (Doc. No. 36 at 11). Moreover, the city of Shafter was told not to drink any of the water, and prison staff knows that Wasco State Prison has been failing a federal standard for TCP for years. (*Id.*). At the screening stage, the Court finds these allegations sufficient to state an Eighth Amendment conditions of confinement claims against defendants Shirley, Cronjager, and Degough should proceed past screening.

### C. Eighth Amendment *Monell* Claim

Plaintiff's amended complaint attempts to state a *Monell* claim against Defendants County of Kern, the City of Wasco, and John Does 1-10. Pursuant to Federal Rule of Civil Procedure 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Although detailed factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While factual allegations are accepted as true, legal conclusions are not. *Id.*; *see also Twombly*, 550 U.S. at 556–57.

Here, the amended complaint merely asserts in a conclusory manner that Defendants "created, allowed, permitted, encouraged . . . a practice or custom of Toxic Wasco Water" from December 2017 to 2024. (Doc. No. 36 at 4-5). As noted, this bald and conclusory statement without any factual specificity is not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678.

"[M]unicipalities may be liable under § 1983 for constitutional injuries pursuant to (1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker." *Jessen v. Cnty. of Fresno*, 808 F. App'x 432, 434–35 (9th Cir. 2020) (citing *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602–03 (9th Cir. 2019) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611

7

1  (1978))).  Under an unconstitutional custom, policy, or practice theory, a municipality faces

2  liability "when execution of a government's policy or custom, whether made by its lawmakers or

3  by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."

4  *Monell*, 436 U.S. at 691.  "[A] custom or practice can be inferred from widespread practices or

5  evidence of repeated constitutional violations for which the errant municipal officers were not

6  discharged or reprimanded." *Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011).

7  To state a claim under this theory, "Plaintiffs must identify a specific policy or custom and

8  then articulate—through their factual allegations—the basis for concluding the identified policy

9  or custom represents 'official policy' and how that policy or custom was the moving force behind

10  the constitutional violation they suffered." *M.S. v. City of Fontana*, No. 16-CV-02498 JGB, 2017

11  WL 10545379, at *6 (C.D. Cal. Apr. 13, 2017) (citing *Monell*, 436 U.S. at 691).

12  At the outset, the Court note that Plaintiff fails to identify who implemented this policy,

13  instead asserting John Does 1-10 as the alleged policymakers.  "As a general rule, the use of

14  'John Doe' to identify a defendant is not favored." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th

15  Cir. 1980) (citation omitted).  While "situations may arise where the identity of alleged

16  defendants cannot be known prior to the filing of a complaint," *Id*., a plaintiff must plead

17  sufficient factual detail to allow the court to reasonably infer that each defendant is liable for the

18  misconduct alleged. *Iqbal*, 556 U.S. at 678.  Here, Plaintiff fails to do so.  Other than naming

19  John Does 1-10, Plaintiff provides no information from which one could later discern the identity

20  of any of the ten unnamed policymakers.  Rather, Plaintiff seeks to sue a collection of

21  unidentified defendants without making any individualized allegation as to each defendant.  Such

22  ambiguous pleading is not permissible.  "Plaintiff may not sue Doe [D]efendants collectively

23  based on speculative beliefs as to whether they exit, or hypothetical allegations of what they may

24  have done that violated Plaintiff's constitutional rights." *Hernandez v. Gonzalez*, No. 10-CV-

25  00248 LJO-GSA, 2010 WL 4917160, at *2 (E.D. Cal. Nov. 24, 2010).

26  Further, Plaintiffs fails to articulate any factual allegations regarding the existence of a

27  policy or custom.  Generally, a plaintiff "must clearly state the policies upon which their claim is

28  based and then allege how that policy leads to municipal liability in this case." *City of Fontana*,

2017 WL 10545379, at *6. However, if a plaintiff "believe[s] a custom provides a basis for municipal liability in these circumstances, [he] must so indicate and then allege facts to support an inference that a custom for which the [municipally] must be liable exists." *Id*.

Throughout the Complaint, Plaintiff broadly asserts that County of Kern, the City of Wasco, and John Does 1-10 maintained a seven-year policy of "toxic waste water" without providing any factual details to support the existence of an official policy issued by John Does or on behalf of County of Kern and the City of Wasco. Moreover, based on the allegations, the Court cannot draw a reasonable inference that a custom for which the Defendants are liable existed pursuant to their authorization. Assuming arguendo that a "toxic waste water" practice did exist, a reasonable inference could be drawn that County of Kern, the City of Wasco, and John Does 1-10 were unaware of its existence base on the pleadings. On one hand, County of Kern, the City of Wasco, and John Does 1-10 were "consciously aware of the toxic water situation" because these issues were "published in newspaper articles." (Doc. No. 36 at 13). However, their alleged awareness conflicts with earlier pleadings filed by Plaintiff, which assert that Defendant DeGough "hid the danger of the contaminated carcinogenic water filled with 1, 2, 3 [TCP] . . . and failed to tell his superiors the truth of the [knonwn] risk[s]."[5] (*See* Doc. No. 8 at 8; *see also* Doc. No. 1 at 8). Without more, these statements undermine Plaintiff's assertion that County of Kern, the City of Wasco, and John Does 1-10 were perpetuating any custom or practice—let alone actively implementing a "Toxic Wasco Water" policy.

Beyond these bare, conclusory statements, the amended complaint fails to assert any facts establishing repeated or consistent unconstitutional practices that have become standard procedures for implementing policy. "[I]solated or sporadic incidents" alone are insufficient to support the claim that a municipality's custom or practice violates the Constitution. *See Sabra v.*

---

[5] This allegation that DeGough "hid" the truth about the contamination from his supervisors was included in the original and first amended complaints, but it was omitted from the SAC. In general, an amended complaint supersedes an original complaint. *See Lacey v. Maricopa Cty.*, 693 F.3d 896, 927 (9th Cir. 2012). However, where factual allegations in an amended complaint are inconsistent with facts alleged in a prior complaint, a court need not accept the new allegations as true. *See Azadpour v. Sun Microsys., Inc.*, No. 06–3272, 2007 WL 2141079, at *2 n. 2 (N.D. Cal. July 23, 2007) ("Where allegations in an amended complaint contradict those in a prior complaint, a district court need not accept the new alleged facts as true, and may, in fact, strike the changed allegations as 'false and sham.'") (citations omitted).

1  *Maricopa Cnty. Cmty. Coll. Dist*., 44 F.4th 867, 884 (9th Cir. 2022).  Without specific dates, policies, or policymakers, or sufficient facts for the Court to draw a reasonable inference of the existence of an unconstitutional custom or practice, the Court finds that Plaintiff has failed to state a *Monell* claim.

### D.  Substantive Due Process

The Fourteenth Amendment protects individuals from the deprivation "of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  The Due Process Clause has both a substantive and a procedural component.  Here, Plaintiff appears to base his substantive due process claim on allegations nearly identical to those underlying his Eighth Amendment claims.  (*See* Doc. No. 36 at 18-24).  To the extent he does, this claim must be treated as a duplicative Eight Amendment claim.  *See Connecticut v. Gabbert*, 526 U.S. 286, 293 (1999) ("[W]here another provision of the Constitution provides an explicit textual source of constitutional protection, a court must assess a plaintiff's claims under that explicit provision and not the more generalized notion of substantive due process." (quoting Graham v. Connor, 490 U.S. 386, 395 (1989) (internal quotation omitted))).  Therefore, this claim will be treated as a duplicative Eight Amendment claim.  *See Seymour v. Wasco State Prison Admin*., No. 21-CV-01485 AWI-EPG, 2021 WL 6117296, at *9 (E.D. Cal. Dec. 27, 2021) (finding the plaintiff's substantive due process claim was more appropriately addressed under his Eighth Amendment conditions of confinement claim), *report and recommendation adopted*, 2022 WL 95224 (E.D. Cal. Jan. 10, 2022).  Thus, the Court dismisses the Fourteenth Amendment claim as duplicative.

### D. State Law Claims

Plaintiff's amended complaint alleges compliance with the Government Claims Act ("GCA") with respect to his state law claims for negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress.  (Doc. No. 36 at 1).  The Court does not make a formal finding that Plaintiff has complied with the GCA, but at the screening stage, Plaintiff has sufficiently alleged compliance for the Court to proceed to analyze Plaintiff's state law claims.

////

### 1. Negligence

"To state a claim for negligence under California law, [p]laintiffs must allege a duty, breach of that duty, causation, and damages." *Stepanyan v. United States*, 2020 WL 8365242, at *6 (C.D. Cal. Dec. 14, 2020) (citing *Carrera v. Maurice J. Sopp & Son*, 177 Cal. App. 4th 366, 377 (Cal. Ct. App. 2009). Here, the Court finds the amended complaint adequately alleges negligence claims against Defendants DeGough, Shirley, and Cronjager. Each individual Defendant had a duty to protect the health and safety of inmates including Plaintiff, and breached that duty by failing to take action to address the contaminated water at WSP, resulting in harm to Plaintiff. Accordingly, the SAC alleges cognizable negligence claims against Defendants DeGough, Shirley, and Cronjager.

### 2. Intentional Infliction of Emotional Distress

There are three elements of an IIED claim in California: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Lawler v. Montblanc N. Am.*, LLC, 704 F.3d 1235, 1245 (9th Cir. 2013) (citation omitted). Conduct is "outrageous" or "extreme" where it "exceed[s] all bounds of that usually tolerated in a civilized society." *Schneider v. TRW, Inc.*, 938 F.2d 986, 992 (9th Cir. 1991) (internal quotation and citation omitted). The amended complaint alleges that each individual Defendant knowingly failed to address a serious risk to the health of inmates, including Plaintiff. DeGough deliberately misled his supervisors concerning the water quality issues at WSP, including the presence of a carcinogenic contaminant. (Doc. No. 36 at 11). Meanwhile, Defendants Shirley and Cronjager knew of the continuing water violations at WSP but failed to take any action. (*Id.*) Liberally construed, the amended complaint asserts that all three individual Defendants were aware that inmates and staff would be exposed to a heightened risk of serious health problems, but failed to take corrective measures that would protect inmates and staff. The Court thus finds the SAC sufficiently alleges "extreme and outrageous conduct" by these three Defendants, who acted with reckless disregard for the health and safety of WSP inmates and staff.

The amended complaint alleges that as a result of his contaminated water-related ailments, Plaintiff has suffered from "kidney damage, liver damage, anguish, . . . and personal emotional distress [to] shock the conscience." (*Id*. at 19). Thus the amended complaint at this stage of the process alleges a cognizable claim for IIED against Defendants DeGough, Shirley, and Cronjager.

### 3. Negligent Infliction of Emotional Distress

"The law of negligent infliction of emotional distress in California is typically analyzed . . . by reference to two 'theories' of recovery: the 'bystander' theory and the 'direct victim' theory." *Burgess v. Superior Court* 2 Cal.4th 1064, 1071 (1992)). "Bystander" cases involve a plaintiff who witnessed the injury of another person and suffered emotional distress as a result. "Direct victim" cases, in contrast, involve circumstances where a plaintiff suffers emotional distress as a result of the breach of a duty owed directly to the plaintiff. *Id.* at 1073. The defendant's duty owed to the plaintiff must be a duty "that is assumed by the defendant or imposed on the defendant as a matter of law, or that arises out of a relationship between the two." *Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc*. 48 Cal.3d 583, 590 (1989); accord, *Burgess*, 2 Cal. 4th at 1073. In "direct victim" cases, "well-settled principles of negligence are invoked to determine whether all elements of a cause of action, including duty, are present . . ." *Id*.

In its decisions addressing the direct victim theory, the California Supreme Court has emphasized that "there is no independent tort of negligent infliction of emotional distress." *Potter v. Firestone Tire & Rubber Co*., 6 Cal.4th 965, 984 (1993); *Burgess*, 2 Cal.4th at 1072; *Christensen v. Superior Court*, 54 Cal.3d 868, 884 (1991); *Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc*., 48 Cal.3d 583, 588 (1989). Instead, "the tort is negligence, a cause of action in which duty to the plaintiff is an essential element." *Potter*, 6 Cal.4th at 984.

However, "there is no duty to avoid negligently causing emotional distress to another . . ." *Potter*, 6 Cal.4th at 984. Thus, "unless the defendant has assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object, recovery is available only if the emotional distress arises out of the defendant's breach of some other legal duty and the emotional distress is proximately caused by that breach of duty." *Id*. at 985; *Erlich v. Menezes*, 21 Cal.4th

543 (1999). A legal duty "may be imposed by law, be assumed by the defendant, or exist by virtue of a special relationship." *Potter*, 6 Cal.4th at 985; *Marlene F.*, 48 Cal.3d at 590.

"In order to limit the otherwise potentially infinite liability which would follow every negligent act, the law of torts holds defendant amenable only for injuries to others which to defendant at the time were reasonably foreseeable." *Dillon v. Legg*, 68 Cal.2d 728, 739 (1968) And the foreseeable risk may entail not only actual physical impact, but emotional injury as well. *Molien v. Kaiser Foundation Hospitals*, 27 Cal. 3d 916 (1980).

Here, as discussed above, DeGough, Shirley and Cronjager had a duty to protect WSP inmates and staff and were negligent in failing to address the contaminated water at WSP despite being aware that it continued to pose a risk to human health and safety. These individual Defendants thus had assumed a legal duty to Plaintiff and other inmates to protect them from the harm of contaminated water, and it was reasonably foreseeable that an inmate who became sick from the contaminated water would suffer severe emotional distress. Indeed, as a proximate result of Defendants' breach of their duties to ensure the health and safety of inmates, Plaintiff was contaminated and suffered serious physical symptoms including defecating on himself, and kidney damage, all of which resulted in Plaintiff experiencing "degradation, humiliation, and profound emotional distress." (Doc. No. 36. at 19). These harms were reasonably foreseeable consequences of Defendants negligently failing to address the water contamination issues that had been persisting at WSP for years. Thus, the amended complaint alleges facts establishing that Defendants DeGough, Shirley, and Cronjager are properly held liable for emotional distress resulting from their negligence and thus the SAC adequately alleges an NIED claim against DeGough, Shirley, and Cronjager.

**CONCLUSION**

Liberally construing the SAC and accepting the allegations as true, the Court finds the SAC sufficiently states an Eighth Amendment conditions of confinement claim, and state law claims for negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress against Defendants DeGough, Shirley, and Cronjager, but no other claims.

////

Accordingly, it is **ORDERED:**

1. Defendants County of Kern, the City of Wasco, and John Does 1-10, and the claims the Court deemed not cognizable, are dismissed.

2. Defendants DeGough, Shirley, and Cronjager, who have filed their appearance, shall file a response to the amended complaint (Doc. No. 36) within thirty (30) days of the date of this Order.

Dated:   March 5, 2025

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE